IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**KIRK H. DeMEYER**                                                                       **PLAINTIFF**

V.                                    **Case No. 10-5092**

**SHERIFF KEITH FERGUSON,**
**DR. JOHN HUSKINS, LT. CARTER,**
**and CAPT. ROBERT HOLLY**                                                **DEFENDANTS**

**BRIEF IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

### I.  INTRODUCTION

The Defendants are entitled to summary judgment on all of the Plaintiff's claims.

### II.  ARGUMENT

    A.    **No Unconstitutional Conditions of Confinement.**

The Plaintiff claim of unconstitutional conditions of confinement, i.e., the mat he slept on while incarcerated was too thin, fails as a matter of law, because, aside from his conclusory allegations, the Plaintiff cannot present any evidence that could (1) corroborate his allegations (prove any of his allegations actually occurred), (2) show that any named Defendant knew of and disregarded any excessive risk to his health or safety at any time during the Plaintiff's incarceration at the Benton County Detention Center (hereinafter "BCDC"), or (3) show that he was actually denied the minimal civilized measure of life's necessities during his incarceration at the BCDC.

"To establish that his conditions of confinement violated the Eighth Amendment, [Plaintiff ] must show that (1) the alleged deprivation is sufficiently serious that it denies 'the minimal civilized measure of life's necessities,' and (2) the prison officials were deliberately indifferent to 'an excessive risk to inmate health or safety.' "*Seltzer-Bey v. Delo,* 66 F.3d 961, 964 (8th Cir.1995) (quoting *Williams v. Delo,* 49 F.3d 442, 445 (8th Cir.1995)); *accord Key v. McKinney,* 176 F.3d 1083, 1086 (8th Cir.1999). As set forth below, Plaintiff has failed to show either.

### 1. No Constitutional Violation Occurred From Allegedly Sleeping on a Mat on the Floor.

In this case, the Plaintiff has failed to present a viable conditions of confinement claim, because he has failed to allege how sleeping on a mat on the floor posed a substantial risk of serious harm to his health or safety. *Smith v. Copeland*, 87 F.3d 265, 267-68 (8th Cir. 1996). Allegations of being forced to sleep on a floor do not rise to the level of "extreme deprivation" prohibited by the Eighth Amendment. *Mann v. Smith,* 796 F.2d 79, 85 (5th Cir.1986) (requiring detainees to sleep on mattresses placed on floor not unconstitutional); *Bowden v. Fairman,* 1992 WL 366905 (N.D.Ill.1992) ("sleeping on a floor mat may be uncomfortable, [but] it does not violate an inmate's constitutional rights.").

Additionally, Dr. Huskins has provided sworn testimony stating that it is his belief that the Plaintiff did not need an additional mat, thicker mat, daytime mat, or additional blankets while he was incarcerated at the BCDC. *See* Statement of Indisputable Facts, ¶ 47.

The Plaintiff's claims, at best, amount only to allegations of routine discomforts, and fail to rise to a level to establish any deprivation of any of life's minimal necessities. Routine discomforts are part of the penalties that criminal offenders pay for their offenses against society, so it is only those deprivations denying the minimal civilized measure of life's necessities that are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillan*, 503 U.S. 1, 8 (1992), (citing *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Accordingly, the Plaintiff's claim of unconstitutional conditions of confinement should be summarily dismissed as a matter of law.

### B. No Denial of Necessary Medical Care.

The crux of the Plaintiff's denial of medical care claims is that while he was in the custody of Benton County, Arkansas, he was dissatisfied with the medical care that he received from Dr. John Huskins. The Plaintiff's claims, however, should be summarily dismissed as a matter of law (1) because he has failed to present any evidence that could show that Dr. Huskins

exhibited deliberate indifference regarding any serious medical needs that he had while he was incarcerated at the BCDC, (2) because he was provided with medical care during his incarceration (See Statement of Indisputable and Material Facts ¶¶ 3-40), (3) because his mere disagreement with the type or timing of the medical care provided to him while he was incarcerated at the BCDC is not actionable under Section 1983, and (4) because he has failed to place any verifying medical evidence in the record that could establish any detrimental effects that resulted from the medical treatment that he received.

The Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished. *Id* at 103. The Eighth Amendment's "deliberate indifference" standard of review regarding conditions of confinement and claims of denial of medical care is the same for both pretrial detainees as well as convicted prisoners. See, e.g., *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir.1994); *Farmer v. Brennan*, 511 U.S. 825 (1994). "Deliberate indifference" encompasses both that the official knows of and disregards and excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 825-26. The official must be (1) aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) the official must also draw the inference. *Id.*

In this case, the medical records in the Plaintiff's jail file show that the Plaintiff received medical treatment from the nursing staff at the BCDC on seven (7) different dates while he was incarcerated. *See* Statement of Indisputable and Material Facts ¶¶ 3, 7, 13, 15, 21, 27 and 34. On those dates, the nurse on duty (either Nurse Hartgraves or Nurse Smith) provided the Plaintiff with hydrocortisone cream for dry skin, vaseline for dry lips, Ibuprofen for a headache, Tylenol or Aleve for shoulder pain, and Sudafed and Tussin for cold symptoms. *Id.* The medical records in the Plaintiff's jail file also show that the Plaintiff received medical treatment from Dr. Huskins on eight (8) different dates while he was incarcerated. *See* Statement of Indisputable and

Material Facts ¶¶ 8, 10, 17, 19, 23, 29, 31 and 35.  On those dates, Dr. Huskins examined the Plaintiff for anxiety - noting that his affect was good; examined the Plaintiff due to a complaint of blood in his stool and prescribed the Plaintiff with hemorrhoid cream; examined the Plaintiff due to a complaint of a head and chest cold and prescribed the Plaintiff with Tylenol and cough medicine; examined the Plaintiff due to a complaint of shoulder pain and prescribed the Plaintiff with Tylenol for pain; examined the Plaintiff due to a complaint of shoulder pain and prescribed the Plaintiff with Aleve; examined the Plaintiff due to a complaint of shoulder pain and prescribed prednisone; examined the Plaintiff due to a complaint of shoulder pain and ordered that the Plaintiff's shoulder be x-rayed and prescribed the Plaintiff with Tylenol; and examined the Plaintiff due to a complaint of shoulder pain and ordered that the Plaintiff's shoulder be x-rayed and prescribed the Plaintiff with Tylenol and Prednisone.  *Id.*  While incarcerated the Plaintiff received two (2) x-rays of his right shoulder -- on 8/26/10, and 11/3/10.  *See* Statement of Indisputable and Material Facts ¶¶ 32 and 37.  The results of both x-rays revealed that the Plaintiff had arthritis in his right shoulder.  *Id.*

   While the Plaintiff was incarcerated at BCDC, it is Dr. Huskins opinion that his overall physical condition stayed the same, and that the pain in his shoulder was attributed to his arthritis, which is a chronic condition.  *See* Statement of Indisputable and Material Facts ¶ 40.  It is Dr. Huskins' belief that best course of treatment for the Plaintiff's condition while he was incarcerated at the BCDC, was to take anti-inflammatory medications. *See* Statement of Indisputable and Material Facts ¶¶ 32 and 37.  The Plaintiff's medication logs show that while the Plaintiff was incarcerated, he was administered the following medications (which include anti-inflammatory medications): hydrocortisone cream, vaseline, hemorrhoid cream, Sudafed, Tussin, Ibuprofen, Acetaminophen (Tylenol), Naproxen Sodium (Aleve), and Prednisone. *See* Statement of Indisputable and Material Facts ¶ 39.

   The Plaintiff's mere disagreement with the type or timing of medical services provided for him while incarcerated at the BCDC is not actionable under Section 1983. *See Dulany v.*

*Carnahan*, 132 F.3d 1234 (8th Cir. 1997).  Additionally, prisoners are not entitled to the best possible care, only reasonable measures to meet a substantial risk of serious harm.  *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997).  Plaintiff has failed to present any evidence that could show that he suffered any ill-effect or injury from the medical care that he received and/or did not receive while he was in the custody of Benton County, Arkansas.

For all of the foregoing reasons, the Plaintiff's claim of denial of necessary medical care should be summarily dismissed as a matter of law.

### C.     No Denial of Access to Courts.

The Plaintiff alleges that the Defendants violated his constitutional right of access to the Courts, although he was admittedly granted access to the law books kept at the BCDC, and although he admittedly was represented by counsel at the time of his incarceration at the BCDC. *Supplement*, Document No. 21, pages 1-3.  The Plaintiff alleges that the law books at the BCDC were incomplete and outdated; and also alleges that his attorney was a "federal attorney," who could not help him on his "state case," i.e., appeal of his conviction.

When bringing an access-to-courts claim, a plaintiff cannot merely allege a denial of access to a law library or adequate attorney, even if the denial is systemic.  Instead, the plaintiff must show the lack of a library or the attorney's inadequacies hindered the plaintiff's efforts to proceed with a legal claim in a criminal appeal, post-conviction matter, or civil rights action seeking to vindicate basic constitutional rights. *Lewis v. Casey,* 518 U.S. 343, 116 S. Ct. 2174, 2181-82, 135 L.Ed.2d 606 (1996).  Because the Plaintiff has suffered no cognizable injury, he lacks standing to bring the access-to-courts claim. *Sabers v. Delano,* 100 F.3d 82, 83-84 (8th Cir., 1996).

Additionally, the Plaintiff's denial of access to courts claim regarding his theoretical appeal of his criminal conviction is barred by the Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In *Heck,* the Court reaffirmed that a prisoner cannot challenge the fact or duration of his incarceration in a civil rights action. Habeas

corpus is the exclusive federal remedy for a prisoner who believes that he is being wrongfully imprisoned. *Id.* at 481 (citing *Preiser v. Rodriguez,* 411 U.S. 475, 488-90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)). Even when a prisoner-plaintiff is not directly challenging the fact or duration of his incarceration, he cannot bring a civil rights action that would effectively "call into question the lawfulness of [his] conviction or confinement." *Heck,* 512 U.S. at 483.

Under the ruling in *Heck,* to prevail on his claims here the Plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus...." *Id.* at 486-87; *see also Wilkinson v. Dotson,* 544 U.S. 74, 81-82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (applying *Heck's* rule to prisoner-plaintiff's request for injunctive relief). When considering a claim such as the one Plaintiff brings here, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. The Plaintiff is undoubtedly attempting to challenge the validity of his sentence. However, because that sentence has not been invalidated, his civil rights claim of being denied access to the Courts is not cognizable. *Id.*

  **D.**  **No Actual Physical Injury.**

According to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e) (PLRA), an inmate may not file a federal civil rights action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Plaintiff has failed to present evidence that could show how his health was actually harmed as a result of his allegations. The Plaintiff has also failed to present any evidence that could show that he suffered any ill-effect or injury from his allegations against the named Defendants. Accordingly, Plaintiff's recovery on all his claims should be barred, because the Plaintiff has failed to allege (or prove) that any actual physical injury resulted therefrom.

## III. CONCLUSION

"Summary judgment is appropriate when there is no dispute between the parties as to any genuine issues of material fact and when the moving party is entitled to a judgment as a matter of law." *Get Away Club, Inc. v. Coleman*, 969 F.2d 664 (8th Cir. 1992). All facts and inferences are looked at in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

In *Celotex v. Catrett,* 477 U.S. 317 (1986), the seminal case on interpreting the federal summary judgment rule, F.R.C.P. 56(c), the Supreme Court carefully explained that a party seeking summary judgment always has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, *if any*,' which it believes demonstrate the absence of a genuine issue of material fact." The *Celotex* Court held ultimately that the movant need not submit supporting affidavits in order to prevail if he can show from the other material on file the absence of a genuine issue of material fact. The case may properly be cited for the proposition that a party moving for summary judgment may shift the burden of proof by showing that the plaintiff will be unable to offer any proof on an essential element of his case (generally referred to as the "scintilla rule"). The Court, in reaching its conclusion, explained that its holding in *Adickes v. Kress,* 398 U.S. 144, a 1970 case which construed Rule 56(c), did not mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the non-moving party bears the burden of proof, but instead, the moving party may discharge its burden by pointing out to the district court that "there is an absence of evidence to support the non-moving party's case." The movant may carry its burden "with or without supporting affidavits." *See Celotex supra.* It is the non-movant who must go beyond the pleadings and by affidavit,

depositions or other *substantive* evidence designate specific facts showing that there is a genuine issue for trial. *Id.* (Emphasis added).

In this case, the Plaintiff has no proof to support his allegations. Accordingly, the Defendants are entitled to summary judgment as a matter of law and the dismissal of Plaintiff's Complaint with prejudice.

    Respectfully submitted,

    DR. JOHN HUSKINS, SHERIFF KEITH FERGUSON, LT. CARTER and CAPTAIN ROBERT HOLLY, *Benton County, Arkansas, Defendants*

    RAINWATER, HOLT & SEXTON, P.A.
    P.O. Box 17250
    6315 Ranch Drive
    Little Rock, Arkansas  72222-7250
    Telephone (501) 868-2500
    Telefax (501) 868-2505
    email: owens@rainfirm.com

    By:  /s/ Jason E. Owens
    Michael R. Rainwater, #79234
    Jason E. Owens, #2003003

**CERTIFICATE OF SERVICE**

  I hereby certify that on January 19, 2011, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system, and I mailed the document by United States Postal Service to the following non CM/ECF participants:

Mr. Kirk H. DeMeyer, *Pro Se*
#145752
ADC Varner Unit
P.O. Box 600
Grady, AR 71644

            /s/ Jason E. Owens
           Jason E. Owens, #2003003
           Attorney for Defendants
           RAINWATER, HOLT & SEXTON, P.A.
           P.O. Box 17250
           6315 Ranch Drive
           Little Rock, Arkansas 72222-7250
           Telephone (501) 868-2500
           Telefax (501) 868-2505
           Email: owens@rainfirm.com